```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
THE CITY OF PROVIDENCE,             )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )   C.A. No. 13-131 S
                                    )
BUCK CONSULTANTS, LLC,              )
                                    )
         Defendant.                 )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court are Defendant Buck Consultants, LLC's ("Buck") Motion to Dismiss (ECF No. 12) and its Motion to Dismiss Amended Complaint (ECF No. 18).[1] For the reasons set forth below, those motions are GRANTED in part and DENIED in part.

I.   Facts

The following facts, which the Court (as it must on a motion to dismiss) assumes to be true, are taken from the Amended Complaint. Buck is the longtime pension actuary for the City of Providence ("City"). In early 2012, the City asked

---

[1] After Buck's initial motion to dismiss, Plaintiff City of Providence ("City") filed an Amended Complaint (ECF No. 16) primarily directed at the Rhode Island False Claims Act count. Pursuant to the parties' stipulation (ECF No. 17), Buck's first motion to dismiss and the City's opposition thereto remained operative. Buck was provided the additional opportunity to file a reply raising arguments regarding the Amended Complaint.

Buck to make various calculations regarding proposed changes to its pension system.  More specifically, the City asked Buck to calculate the savings that would result from a ten-year suspension of cost of living adjustments ("COLA's").  Based on Buck's projections, the City passed an ordinance to suspend COLA's until the pension system reached a funding ratio of 70%.  The City's retirees and unions opposed the ordinance.  Litigation was initiated in state court, and, in an effort to avoid this litigation, the City entered into negotiations with employee unions and retirees regarding the pension terms.  During these negotiations, Buck provided additional calculations to the City of its projected savings under various scenarios, almost all of which involved a ten-year COLA suspension.  In connection with its services, Buck presented the City with five claims for payment.  In reliance on Buck's calculations, the City reached a tentative agreement with its unions and retirees.

The City alleges that, when first confronted with discrepancies in its calculations, Buck admitted that its prior projections had failed to account for the 2012 COLA, which had already been paid.  This error caused the projected savings to be overstated by $10 million.  The City claims that, had it known that Buck's calculations were incorrect, it "would never have agreed with its union employees and retirees to the pension modifications to which it is now bound."  (Am. Compl. ¶ 5.)

The City subsequently brought suit against Buck for breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, and violation of the Rhode Island False Claims Act.

II. Discussion[2]

"In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (alteration in

---

[2] In support of its motions to dismiss, Buck has filed various matters outside the pleadings, namely a statement by the City's Mayor, Buck's 2012 Valuation Report, the Memorandum of Understanding ("MOU") between the City and its retirees, and the transcript of the Superior Court Fairness Hearing. However, the Court need not decide whether it may properly consider these documents because none of them would change the result reached in this case. The Mayor's statement and Fairness Hearing transcript tend to indicate that the settlement was favorable to the City, but they do not conclusively demonstrate that the settlement was more favorable than the status quo, namely the ordinance. The 2012 Valuation Report is primarily offered to contradict the City's contention that, if Buck's calculations in years past had been more accurate, it would have contributed more funds to the pension system. Because the Court finds that the City's "negotiation claim" survives the instant motions to dismiss, it need not consider this alternative "underfunding claim." Finally, the MOU, executed on May 22, 2012, does not defeat the City's claim. The City alleges that Buck made several calculations involving a ten-year COLA suspension prior to that date. Similarly, the fact that the agreement was not approved by the Superior Court until April 12, 2013, after the City discovered the alleged error, is not fatal. Buck fails to dispute the City's sensible assertion that it was not free to breach the agreement prior to approval.

original).  In ruling on such a motion, the Court must "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." Id. at 41 (internal citation and quotation marks omitted). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (internal citation and quotation marks omitted).[3]

    A.    Causation and Damages

The City must establish both causation and damages in order to recover for breach of contract, breach of fiduciary duty, negligence, or negligent misrepresentation.  See Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (breach of contract); Lifespan/Physicians Prof'l Servs. Org., Inc. v.

---

[3] While the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure applies to the City's False Claims Act count, it does not apply to the City's other claims.  Rule 9(b) governs a claim "where the core allegations effectively charge fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009).  Thus, in order to determine whether the City's breach of contract, breach of fiduciary duty, negligence, and negligent misrepresentation counts trigger Rule 9(b), "it is necessary to examine the allegations for averments that [the defendant's] actions were knowing."  Koch v. I-Flow Corp., 715 F. Supp. 2d 297, 304 (D.R.I. 2010).  In the present case, the City expressly disclaims any allegation "that Buck intentionally gave the City incorrect calculations or that Buck otherwise acted knowingly." (Pl.'s Mem. of Law in Supp. of its Objection to Def.'s Mot. to Dismiss 13, ECF No. 14-1.)

Combined Ins. Co. of Am., 345 F. Supp. 2d 214, 226 (D.R.I. 2004) (negligent misrepresentation); English v. Green, 787 A.2d 1146, 1151 (R.I. 2001) (negligence); Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., Inc., No. CIV.A. PB 01-3522, 2004 WL 877599, at *13 (R.I. Super. Apr. 21, 2004) (breach of fiduciary duty). Buck argues that the City's allegations on these issues are insufficient.

As a preliminary matter, Buck contends that the savings ultimately realized from the settlement exceeded $199 million. This total is significantly greater than the savings projected by Buck during the City's negotiations. However, the City alleges that Buck admitted its failure to account for the 2012 COLA payments in making its calculations and that this error resulted in a $10 million inflation in its savings estimate. In these circumstances, it is reasonable to infer that Buck's subsequent calculations, which predicted much higher savings, were inaccurate. This later-created data raises issues better left to summary judgment or trial.

In its objection to Buck's motion to dismiss, the City explains that the primary harm complained of stems from the fact that the City "agreed to certain pension changes during its negotiations with the unions and retirees to which it would not have otherwise agreed." (Pl.'s Mem. of Law in Supp. of its Objection to Def.'s Mot. to Dismiss 16, ECF No. 14-1.) In the

absence of any agreement, the previously enacted ordinance would govern the City's obligations to the pension system, unless and until a court ruled otherwise. It is reasonable to then infer that the savings the City would have realized in this scenario would have been greater than those realized through the negotiated changes. Indeed, the very purpose of negotiation is to reach a compromise.[4]

B. Negligent Misrepresentation

Buck also raises several arguments regarding the City's negligent misrepresentation claim. First, it points out that the alleged $10 million error reflected less than 1% of the pension system's total liabilities. Buck argues that the City could not justifiably rely on the accuracy of its calculations to within such a small margin. However, whether the City's reliance was justifiable "is a factual issue inappropriate for

---

[4] Contrary to the City's suggestions, however, the mere fact that Buck may have overstated the City's savings by $10 million does not mean that the City suffered a loss of that amount. See Tiboni v. Milliman, Inc., No. 1:08 CV 1642, 2010 U.S. Dist. LEXIS 131896, at *26 (N.D. Ohio Aug. 10, 2010) ("There is no causal connection between the Fund's actual liability and the amount recognized and reported on by [] its actuaries."). Indeed, because, according to the City, Buck's initial estimate was based on an error, the extra $10 million never actually existed. Nonetheless, at the motion to dismiss stage, the Court is not required to determine the precise amount of damages, nor is the City's arguable logical flaw in pleading fatal to its complaint. As previously noted, it is sufficient that the allegations in the complaint create the reasonable inference that the City suffered some harm as a result of Buck's actions.

resolution on a motion to dismiss." In re TJX Cos. Retail Sec. Breach Litig., 524 F. Supp. 2d 83, 92 (D. Mass. 2007), aff'd in part, 564 F.3d 489 (1st Cir. 2009). Moreover, Buck mischaracterizes the magnitude of its alleged error. While the $10 million discrepancy constituted only a small percentage of the system's total liabilities, that is not really the point. The City claims that the error was significant enough to affect its decision to enter into an agreement with its unions and retirees. This is sufficient to survive a motion to dismiss.

Buck also contends that the City has failed to plead its intent to induce action. This argument is unavailing as well. The Amended Complaint alleges that, in the actuarial opinions provided to the City, Buck employee Philip Bonanno represented that he was a member of the American Academy of Actuaries ("Academy"). It further alleges that, according to the Academy, a statement of actuarial opinion is "an opinion expressed by an actuary in the course of performing actuarial services and intended by that actuary to be relied upon by the person or organization to which the opinion is addressed." (Am. Compl. ¶ 27 (emphasis in original).) Based on these facts, it is reasonable to infer that Buck intended to induce the City's reliance.

In a final attack on the negligent misrepresentation count, Buck asserts that "[s]tatements of opinion cannot form the basis

for a misrepresentation claim." In re Frusher, 146 B.R. 594, 597 (Bankr. D.R.I. 1992), aff'd sub nom. Frusher v. Baskin-Robbins Ice Cream Co., 43 F.3d 1456 (1st Cir. 1994). However, one district court has rejected a similar argument that "actuarial opinions are mere opinions that cannot be the basis for a claim of misrepresentation." Walton Risk Servs., Inc. v. Clarendon Am. Ins. Co., No. 01 C 0398, 2002 WL 31415769, at *6 (N.D. Ill. Oct. 25, 2002). The court reasoned, "[t]he fact that [the defendant] used actuarial tools and assumptions does not excuse it from liability for negligent misrepresentation." Id. The Walton court's analysis is convincing. The alleged error in this case did not result from a failure to accurately predict the future. Rather, it was a simple mathematical miscalculation.

    C.   False Claims Act[5]

The City's claim under the Rhode Island False Claims Act ("Act") relies entirely upon a "worthless services" theory. Under this theory, a defendant violates the Act if "services literally are not provided or the service is so substandard as to be tantamount to no service at all." United States ex rel.

---

[5] Given the paucity of caselaw interpreting the relevant provisions of the Act, R.I Gen. Laws § 9-1.1-3(a)(1) and (a)(2), the parties agree that the Court should look to cases involving the functionally identical provisions of the federal False Claims Act. Compare R.I. Gen. Laws § 9-1.1-3(a)(1) and (a)(2) with 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).

Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 158 (E.D. Pa. 2012) (quoting In re Genesis Health Ventures, Inc., 112 Fed. App'x 140, 143 (3d Cir. 2004)). The services provided by Buck in the present case cannot fairly be characterized as worthless. Even if Buck erred in its calculations, it at least provided the City with a rough approximation of the savings that would be achieved by a ten-year COLA suspension. See United States v. Dialysis Clinic, Inc., No. 5:09-CV-00710 (NAM/DEP), 2011 WL 167246, at *21 (N.D.N.Y. Jan. 19, 2011) ("Plaintiff does not allege that defendant failed to provide **any** services to their patients. Rather, plaintiff challenges the quality of care . . . . This allegation is not the equivalent of no performance at all and thus, does not fit within the worthless services category." (internal quotation marks omitted)); U.S. ex rel. Sanchez-Smith v. AHS Tulsa Reg'l Med. Ctr. LLC, 754 F. Supp. 2d 1270, 1287 (N.D. Okla. 2010) (rejecting worthless services claim where the defendant "provided well over fifty percent of the required therapy hours for the patient identified as suffering the most egregious violation").

The Act also includes a scienter element, which requires that a person act "knowingly." This term is defined to include "deliberate ignorance" or "reckless disregard." R.I. Gen. Laws § 9-1.1-3(b). Throughout the Amended Complaint the City repeatedly alleges that Buck was instructed that the proposed

COLA suspension would be effective January 1, 2013.  Based off these allegations, the City claims that Buck "knew or should have known" that it calculated the prospective COLA suspension using the incorrect date.  (Am. Compl. ¶ 72.)  This is the language of negligence, and is insufficient to support a False Claims Act claim.  See Mikes v. Straus, 274 F.3d 687, 703 (2d Cir. 2001); Hagood v. Sonoma Cnty. Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996).  The False Claims Act count here cannot hold water because the services were not worthless and the scienter element is not adequately pleaded.

III. Conclusion

For the foregoing reasons, Defendant's motions to dismiss are GRANTED with respect to Plaintiff's Rhode Island False Claims Act claim, and DENIED with respect to the remainder of the complaint.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
United States District Judge
Date:  August 9, 2013